(17 Misc. Rep. 35)

## DODIN v. DODIN et al.

(Supreme Court, Special Term, New York County. May, 1896.)

1. ADOPTION—RIGHT OF ADOPTED CHILD TO INHERIT.
   Laws 1887, c. 703, § 1, which amends Laws 1873, c. 830, so as to confer the right of inheritance on adopted children, applies to children theretofore adopted under the act of 1873.

2. SAME—RETROSPECTIVE LAWS—EXTENDING RIGHT OF INHERITANCE.
   Laws 1887, c. 703, which confers on adopted children the right to inherit from their adopted parents, which they did not theretofore possess, is not retrospective, as it does not affect any existing right or obligation.

Action by Mary J. Dodin against Alexander J. Dodin and others for dower. Judgment for plaintiff.

William F. Clare, for plaintiff.

J. P. Albright and George H. Yeaman, for defendant Alexander J. Dodin.

James P. Campbell, for guardian ad litem of Josephine Dodin.

BEEKMAN, J. This action is brought by the plaintiff to recover her dower in certain real estate in the city of New York, of which her husband, Mansuy P. Dodin, died seised and possessed. The defendant Alexander J. Dodin is a son of the decedent by his first wife. The defendant Josephine Dodin, an infant 10 years of age, is an adopted daughter of the decedent and his second wife, the plaintiff in this action. In view of the fact that a sale of the premises is desirable, it has become necessary, in order that a complete disposition of the proceeds of the sale may be made, to determine a controversy between the two defendants, which involves the question whether Josephine Dodin, the adopted child, was capable of inheriting from the decedent. The defendant Alexander J. Dodin is the only child of the blood of the deceased, as there was no issue of the second marriage. The deceased and his wife, the plaintiff, on the 26th day of November, 1886, by proceedings which were duly had in the court of common pleas of the city and county of New York, under chapter 830 of the Laws of 1873, duly adopted the defendant Josephine Dodin, who at that time was an infant less than one year old. From that time the child received the surname of her adopted parents, was treated by them in all respects as their child, and is still under the care of the plaintiff, who, since the decease of her husband, has maintained her. On the 19th day of April, 1895, Mansuy P. Dodin died, in this city, leaving a will dated the 25th day of March, 1891, which was duly admitted to probate by the

surrogate's court of the city and county of New York on the 18th
day of May, 1895. At the time of his decease, he was seised of a
large real and personal estate. By his will, after providing for the
payment of his debts, he gives the sum of $20,000 to his son, the
defendant Alexander J. Dodin; $10,000 to the children of his brother
Alexander Dodin; $10,000 to the children of his brother Joseph Do-
din; and $15,000 to his wife, the plaintiff, and one Patrick C. Davey,
"in trust, the said sum of money to be put out at interest, secured
by bond and by mortgage upon lands situate within the city of New
York, and the interest, income, and profits issuing therefrom, or so
much thereof as may be necessary and convenient, to be applied to
the support, maintenance, and education of my adopted daughter,
called Josephine Dodin, during her minority, and, on her becoming
of legal age, then this trust to be at an end, and the body and ac-
cretions of said trust to become her sole property absolutely; and,
should she die before attaining the said age of twenty-one years, then
and in that case the body and accumulations of this trust shall be as
of the remainder of my estate." After giving a further legacy of $1,-
000 to the Sisters of the Poor of St. Francis, the testator makes the
following provision: "Seventh: And the remainder of my estate,
real, personal, and equitable, not hereinbefore devised and bequeath-
ed, of which I die possessed or entitled to, I hereby direct to descend
and be distributed according to the laws of the state of New York."

It is unnecessary to consider whether the real estate in question
passed by devise under the seventh clause of the will, or the testator
died intestate in respect thereto. In either event, if the defend-
ant Josephine Dodin had the capacity to inherit, she would be en-
titled to an undivided half of such property,—in the one case, as
devisee coming within the class described by the testator; in the
other, by virtue of the statute of descents.

In order to determine the question as to whether she was an heir
at law of the deceased, it becomes necessary to consider the stat-
utes of this state relating to adoption. The first act passed upon
this subject is found in chapter 830 of the Laws of 1873, entitled "An
act to legalize the adoption of minor children by adult persons."
The first section of that act reads as follows:

"Adoption, as provided for in this act, is the legal act whereby an adult
person takes a minor into the relation of child, and thereby acquires the
rights and incurs the responsibilities of parent in respect to such minor."

Section 8 provides as follows:

"The person adopting a child, and the child adopted, and the other persons
whose consent is necessary, shall appear before the county judge of the coun-
ty in which the person adopting resides, and the necessary consent shall
thereupon be signed, and. an agreement be executed by the person adopting,
to the effect that the child shall be adopted and treated, in all respects, as
his own lawful child should be treated."

Whereupon it is further provided that the judge, if satisfied that
such adoption is desirable, shall make an order, in which shall be
set forth at length the reasons for such order, directing that the
child shall thenceforth be regarded and treated, in all respects, as
the child of the person adopting.

Section 10 provides as follows:

"A child, when adopted, shall take the name of the person adopting, and the two, thenceforth, shall sustain toward each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation, excepting the right of inheritance, except that as respects the passing and limitations over of real and personal property, under and by deeds,‑conveyances, wills, devises and trusts, said child adopted shall not be deemed to sustain the legal relation of child to the person so adopting."

In the year 1887, and after the adoption of the defendant Josephine Dodin, pursuant to this statute, an act was passed by the legislature, known as chapter 703 of the Laws of 1887, which reads as follows:

"Section 1. Section ten of chapter eight hundred and thirty of the Laws of eighteen hundred and seventy-three, entitled 'An act to legalize the adoption of minor children by adult persons,' is hereby amended so as to read as follows: 'Sec. 10. A. child, when adopted, shall take the name of the person adopting, and the two, thenceforth, shall sustain toward each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation, (including) the right of inheritance, and the heirs and next of kin of the child so adopted shall be the same as if the said child was the legitimate child of the person so adopting, except that as respects the passing and limitation over of real and personal property, under and by deeds, conveyances, wills, devises and trusts, dependent upon the person adopting dying without heirs, said child adopted shall not be deemed to sustain the legal relation of child to the person so adopting, so as to defeat the rights of remainderman, and in case of the death of the person so adopted, the person so adopting, as above provided, shall, for the purpose of inheritance, sustain the relation of parent to the person so adopted.' "

It will thus be seen that, by the amendment of the section in question, the capacity to inherit, which was denied in the first act, is granted in the second. The contention ·on the part of the defendant Alexander J. Dodin is that the act of 1887 is not retrospective in its operation, and applies only to children adopted after it took effect. I have no dissent to express to the authorities which have been cited by his counsel in support of the proposition that the courts will not attribute retroactive effect to a statute unless the legislature has plainly expressed an intention that such shall be the case. The difficulty with his argument is that he has assumed that the application of the act of 1887 to previously adopted children would be "retrospective," within the proper meaning of that term.

In Potter's Dwarris on Statutes, at page 165, the author in treating of retrospective laws says:

"Such laws, when they are only such, look not upon the future, but upon the past; or, in other words, pronounce judgment upon acts done antecedent to their adoption, and in this respect assume a judicial power, as contradistinguished from what is strictly legislative power. They assume to give character to facts which they did not possess at the time they took place, and then to judge of them in the new character thus legislatively created by them; to settle, in some instances, old rights depending on laws as they existed before the act was passed, by new principles created and applied by the retrospective act having no existence antecedent to the time of its passage, which then, and not till then, sprang into being."

Sedgwick, in his work on Statutory and Constitutional Law, at page 188, defines such a statute as follows:

"A statute which takes away or impairs any vested right acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a

new disability in respect to transactions or considerations already past, is to be deemed retrospective or retroactive."

It will be observed, on a comparison of the act of 1873 with that of 1887, that only so much of the latter as relates to the subject of inheritance is to be considered as a new enactment, under the principle laid down in the case of Ely v. Holton, 15 N. Y. 595. The latter act does not in any way assume to change the agreement which the adopting parent is required to enter into under the original act, or to increase his liabilities or subtract from his rights. His agreement is still precisely the same as the statute originally required it to be, namely, "that the child shall be adopted and treated, in all respects, as his own lawful child should be treated." The amendatory law touches solely the capacity of a child which has been adopted to inherit from the adopting parent, and of the latter to inherit from the adopted child. How distinct and apart this is from all of the substantial elements which really enter into the relation by adoption, and the reciprocal rights and duties associated with it, is plain upon a moment's reflection. Conferring upon such a child a capacity to inherit is a matter resting purely with the legislature, and does not form part of the act of adoption. The adopting parent has nothing whatsoever to do with it. The act of adoption having taken place, the legislature declares that the capacity to inherit shall exist; and this it is competent to do at any time before the decease of the adopting parent. In so doing, it neither takes away nor impairs any vested right, or creates any new obligation, or imposes any new duty, or attaches any new disability, in respect to the previous act of adoption. It is a matter, so to speak, between the child and the state, not between it and the parent. "Nemo est hæres viventis," is a maxim which tersely expresses the principle that the "right of inheritance," so called, accrues only at the moment of the decease of the intestate. Prior to that time, the absolute ownership, with all its incidents, rests in him, with testamentary power sufficient to completely divert the operation of the statute of descents. It is therefore, in a certain sense, a misnomer to speak of the capability to inherit as a right. It may be more properly characterized as something which may ripen into a right, if the person seemingly within the definition of the statute is actually so when the descent is cast. The right and the fact of inheritance are coincident. All statutes, then, which determine the devolution of property upon the death, are prospective in their operation from the nature of the case. They deal exclusively with conditions neither of the past nor of the present, but of the future. No present rights are affected, nor are any past conditions or transactions interfered with, but provision alone is made for the devolution of an intestate's estate under a classification of heirship applicable to facts as they may exist at the moment of death.

If the contention of the defendant Alexander J. Dodin is sound, then every act of the legislature changing the law of descents is pro tanto retrospective, in so far as it might exclude from the capacity to inherit any class of persons then in being who were before

within the permission of the statute. It is needless to say that such acts have never been so regarded; nor can they be, as they do not touch a single right which any living being can point to as his. They deal only with prospective conditions. Inheritance is not a private right, but rests upon the will of the state, which is expressed in laws dictated by considerations of sound public policy, and which are operative, in every case, according to the latest declaration of the legislative will. Whoever, therefore, comes within the description of inheritors at the time of the death of the intestate, takes under the statute as it then is, because it is with conditions existing at that time only that the law undertakes to deal, and it is at that time only that the law is operative.

Now, the amendment of 1887 was in effect a modification of the statute of descents, giving to the word "children," as used in that statute, a meaning which includes adopted as well as children of the blood of the deceased. The inheritance of the adopted child is still under and in accordance with the statute of descents, although the application of the statute is by force of chapter 703 of the Laws of 1887. The effect and operation of the act in question, then, is prospective, not retrospective. It simply adds adopted children to the list of those who shall be capable of inheriting if, at the time the descent is cast, they are within that description. How can it properly be considered as retrospective? Does it affect a single right or increase a single obligation of the adopting parent? Does it add to or subtract from the agreement he entered into? Has it even limited, in the slightest degree, his testamentary power? Plainly not. As I have already said, the heritable capacity of the child has nothing to do with either the process of the adoption, or with the respective rights and duties which arise out of, and which are assumed by virtue of, the transaction. It concerns, not the adoption, but a certain status of the child after adoption, over which the legislature has absolute control, and which it may change or modify without in the least affecting the act of adoption or the substantive rights and liabilities flowing from it. Although the legislature has in this act characterized such inheritance as a right, the word is used in its popular sense, and is not to be understood as conveying the idea of property interest, but rather as signifying a capacity or qualification to inherit which renders possible the future acquisition of a right. Had the legislature undertaken to declare that the adopting parent should settle a sum of money upon the child, or should bind himself or be bound, by the fact of adoption, to some newly-created duty, there would be sufficient ground for claiming that it would be giving such an act retrospective operation to hold that it applied to past adoptions. But that is not at all the case here. The adopting parent is a stranger to the rights and interests which devolve by law upon others in respect to property the title to which falls from him, with other earthly concerns, upon his decease; and, when the state declares that his adopted child shall have the capacity to inherit, it takes nothing from him, nor does it add to a single duty he has assumed. As already intimated, the act in question is no more retrospective than would be

one which changed the laws of succession to personal or real property, although such a law would be applicable to persons living at the time of its enactment, as well as to those who came into being thereafter. It is only when such rights have vested that legislation assuming to affect them becomes retroactive.

If, in 1887, the legislature, instead of amending the act of 1873, had amended the statute of descents by inserting a provision that the word "children," as used in that statute, should include adopted children, would it for a moment be contended that the infant in this case would not have inherited from the decedent? And yet this is, in effect, exactly what the legislature has done in passing the amendatory act of 1887. That amendment, as I think I have already shown, relates exclusively to the heritable capacity of adopted children, and is operative, and operative only, as a modification of the law relative to succession to real and personal property of an intestate. I am therefore of the opinion that, by force of the act of 1887, the defendant Josephine Dodin acquired the capacity to inherit from the decedent, which became a right upon his decease, and that, subject to the dower of the plaintiff, she and the defendant Alexander J. Dodin are the owners in fee of the real estate in question. She is therefore entitled to participate equally with him in the net proceeds of the property after the claim of the widow shall have been satisfied.

I have examined the cases which have been cited by counsel for the defendant Alexander J. Dodin, but none of them, it seems to me, conflict with the views I have expressed. All of them apply to cases where rights had already accrued or liabilities already existed. Attention has been particularly called to the case of In re Miller's Estate, 110 N. Y. 220, 18 N. E. 139. There the petitioner was subject to an inheritance tax at the time of the death of the deceased, and at the time the order of the surrogate was made assessing the amount of the tax. Subsequently, but before the tax was paid, an act was passed by the legislature amending the inheritance tax law in such a way that, had the amendment been in effect at the time of the death of the deceased, the petitioner would not have been liable for the tax. The court held, however, that the amendatory act did not relate back so as to avoid a liability which had already accrued under the original act. As no such condition as this is presented in the case at bar, it is difficult to see the applicability of the authority. The same may be said about the cases of O'Reilly v. Stage Co., 87 Hun, 406, 34 N. Y. Supp. 358; Isola v. Weber, 147 N. Y. 329, 41 N. E. 704; People v. Fitch, 145 N. Y. 261, 39 N. E. 972. Some reference has been made to the case of Godine v. Kidd (Sup.) 19 N. Y. Supp. 335, upon the theory that the court has there undertaken to construe the act of 1887 to mean that an adopted child can inherit only where no legitimate child of the blood of the decedent survives him. It is only necessary to read the opinion in that case to see how very far the court is from attempting to hold anything of the kind. The case is one where a controversy arose between a niece of the decedent, claiming as heir

at law, and an adopted child. In the course of his opinion, Mr. Justice O'Brien refers with approval to the statement of the judge below that the act of 1873 was amended in 1887 so that an adopted child had heritable qualities, and might take the property of the father or mother, to the exclusion of those who otherwise might have been the heirs at law, "provided there were no natural children of the person adopting the child." An effort is made to give this proviso a meaning which neither the judge below nor the justices at general term ever intended it should have. What was said is to be considered in the light of the facts of the case then before the court, and, for all the purposes of that case, the statement was entirely correct. Had it been supposed that any such strained and unnatural construction was to be put upon the language, the learned justice would doubtless have added to the proviso the words "in which case the adopted child inherits with such children."

It follows from what I have said that there should be judgment for the plaintiff that the property be sold; that the value of her dower rights be ascertained, and paid to her out of the proceeds; and that after the payment of the costs of the action, which are awarded to all of the parties, out of the fund, the net remaining surplus be equally divided between the two defendants. Ordered accordingly.